The undersigned have received the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
******************
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as
STIPULATIONS
1. On March 3, 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said date, the Employer-Employee relationship existed between the Plaintiff and the Defendant-Employer.
3. On said date, the Defendant-Employer was insured by American National Fire Insurance Company.
4. On said date, plaintiff's average weekly wage was $333.84.
5. Pursuant to a Form 21 Agreement for Compensation for Disability approved by the Industrial Commission on May 5, 1992, Defendants paid and Plaintiff received temporary total disability benefits from March 3, 1992 through June 26, 1994 at his compensation rate of $222.58 per week.
6. Pursuant to a Form 26 Supplemental Memorandum of Agreement as to Payment of Compensation approved by the Industrial Commission on August 18, 1994, Defendants paid and Plaintiff received temporary partial disability benefits from June 27, 1994 through February 10, 1995 at two-thirds of the difference between his pre-injury average weekly wage and his earnings while employed by Timberlyne Cabinet Company. During the last four weeks of that employment, his temporary partial compensation rate was $79.56 per week.
7. Since February 10, 1995, Defendants have continued to pay Plaintiff temporary partial disability at the rate of $79.56 per week.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 36-year-old carpenter who had been employed by Avery Construction Company, operated by his brother, Gene, for five or six years at the time of his injury by accident.
2. On March 3, 1992, Plaintiff suffered an injury by accident arising out of and in the course of his employment with Avery Construction Company.
3. On April 16, 1992, Plaintiff and Defendants entered into a Form 21 Agreement for Compensation for Disability, which was approved by the Industrial Commission on May 5, 1992.
4. Plaintiff's initial treatment was in the Wake Medical Center Emergency Room on the date of injury. Six days later, he came under the care of Dr. Robert B. Nelson of the Raleigh Orthopaedic Clinic, who gave him a knee immobilizer and prescribed range of motion exercises at home. Later, Plaintiff was started on a course of physical therapy at HORA (Hand and Orthopaedic Rehabilitation Associates), which continued through June 10, 1993.
5. After multiple follow-up visits, Dr. Nelson found, in his Final Disability Evaluation of December 21, 1992, the Plaintiff had reached maximum medical improvement and retained a 15 percent permanent partial disability of the right leg. After Dr. Nelson's retirement, Plaintiff came under the care of Dr. Lyman S.-W. Smith, who has seen him on multiple occasions since September 1992. Dr. Smith agrees with the opinions expressed by Dr. Nelson.
6. While a number of potential problems can result from the kind of knee injury Plaintiff suffered on March 3, 1992, the only one Dr. Smith actually found was an injury to Plaintiff's anterior cruciate ligament (ACL), which was either stretched or torn.
7. By the time of Plaintiff's January 21, 1994 appointment with Dr. Smith, he was continuing to receive physical therapy and, in addition, was working out on his own three hours per day. At the same time, his knee was still improving. Dr. Smith recommended that Plaintiff continue exercising his leg and he felt that an ACL reconstruction was not warranted. He remains of that opinion.
8. Since his March 3, 1992 injury by accident, Plaintiff has successfully completed a two-year course for which he received a certificate in heating and air conditioning from Wake Technical Institute. He has also completed the first half of a two-year program in electrical studies.
9. While going to school and receiving temporary total disability benefits, Plaintiff was provided vocational services by Defendants, first through Southern Rehabilitation Network and then Page Rehabilitation Services, Inc. After an initially unsuccessful effort to locate alternative employment, Plaintiff was referred to Verne G. Schmickley, Ph.D., an occupational health psychologist, who saw and evaluated him twice, May 14 and June 10, 1994. A battery of tests were administered and Plaintiff was found to be suffering from long-term, chronic depression of a low grade magnitude. That condition was neither caused nor significantly contributed to by his March 3, 1992 injury by accident.
10. Within three weeks of his second visit to Dr. Schmickley, Plaintiff began working at Timberlyne Cabinet Company, where he was employed for over seven months, supporting Dr. Schmickley's opinion that his depression was not only unrelated to his injury by accident, but it did not disable him from gainful employment.
11. Dr. Schmickley saw and interviewed Plaintiff again on December 29, 1995. He found that Plaintiff's depression was not significantly different than it had been when seen in May and June 1994. Thus, Plaintiff was not disabled from a psychological standpoint when last seen by Dr. Schmickley and Plaintiff has offered no evidence of a subsequent change in that condition.
12. Following his community college training, and with the help of Defendants through the efforts of vocational consultant George Page, Plaintiff found and performed work as a drawer assembler with Timberlyne Cabinet Company, building drawers from wooden parts. He received on-the-job training, starting on a part-time basis on June 27, 1994. After two weeks, he began working full time and did so for seven months, through February 10, 1995. He was provided an anti-fatigue mat and a stool to help with his physical complaints. He used the mat but not the stool.
13. While the duties of his job at Timberlyne Cabinet Company called for Plaintiff to stand at his work station, he was able to move about the area, and did so, obtaining and assembling the component parts of the drawers he was constructing, including metal slides which came in boxes weighing approximately 40 pounds. Notwithstanding back pain he began experiencing, Plaintiff occasionally carried those boxes, although he had the option of using a cart to move them from the storeroom to his work station.
14. Because Plaintiff's position at Timberlyne Cabinet Company was not a production job, he had no specific daily, weekly or monthly quotas to fill. His supervisor, James Jense, never complained about the number of drawers he produced. To the contrary, he testified that Plaintiff was a good employee, that he did a good job, and that he would hire him back if there was an opening. In fact, the drawer assembler position has been vacant twice since Plaintiff quit in February 1995.
15. Plaintiff testified that his leg was hurting him when he voluntarily resigned on February 10, 1995. However, at no time in the seven and one-half months he worked at Timberlyne Cabinet Company did Plaintiff return to his treating physician, Dr. Smith, or any other doctor, for either treatment or help to have his job duties changed. If Plaintiff had, Dr. Smith would have provided additional treatment or helped him have his job modified as needed.
16. When next seen by Dr. Smith, which was on March 24, 1995, Plaintiff reported a long history of back problems and said that the drawer assembler position was "not compatible for him because of pain in his back." He did not attribute his recent resignation to knee difficulty. In fact, at that time, Dr. Smith found him to have no patella tenderness, no effusion and a full range of motion in his right knee.
17. During the more than 35 months between Plaintiff's injury and the date on which he quit his job at Timberlyne Cabinet Company, Plaintiff was seen in the emergency room of Wake Medical Center on 19 occasions by two orthopedic surgeons, Drs. Nelson and Smith, and at no time did he receive treatment for back pain. While he was diagnosed as having spondylolysis or early degenerative arthritis by Dr. Nelson on March 30, 1992, Plaintiff told his physical therapist that same day that his back pain "began approximately three years ago." The effect, if any, of Plaintiff's back pain on his earning capacity is not the result of his March 3, 1992 injury by accident.
18. Despite Plaintiff's long-standing back condition and the residual effects of his March 3, 1992 injury by accident, he was capable of performing the position of drawer assembler when he voluntarily left that job in February 1995. Shortly thereafter, Dr. Smith reviewed both Plaintiff's written job description and a videotape depicting portions of the duties involved and he stated that "this is a position which could be able to be performed by Mr. Avery." He rendered that opinion both in a July 17, 1995 letter and in his deposition testimony.
19. As explained by Dr. Smith, the kind of injury Plaintiff suffered does not create a problem with activities of daily living and it has little or no impact on a person's ability to bend or squat. In addition, although putting torque on the knee could create difficulties, Dr. Smith found that when Plaintiff was next seen after he quit his drawer assembler job, his knee was stable to varus and valgus, tests administered to determine the stability of a knee when it is subjected to stress placed on its side ligaments by exerting twisting motions. He also found that Plaintiff was able to pivot and he felt that he should have no problems with "low energy turns," including the kinds of turning activities required in his job at Timberlyne Cabinet Company.
20. Subsequent to his having reached maximum medical improvement with a 15 percent permanent partial disability in December 1992, and following his return to work on June 27, 1994, Plaintiff elected to receive temporary partial, rather than permanent partial disability benefits and the parties entered into a Form 26 Supplemental Memorandum Agreement as to Payment of Compensation, whereby they agreed that Plaintiff's period of temporary total disability had ended, that upon returning to work his earning power had been reduced below his pre-injury average weekly wage of $333.84, and that he was only temporarily partially disabled.
21. Plaintiff has failed to prove a substantial change in condition causally related to his March 3, 1992 injury by accident since his temporary total disability ended upon returning to work on June 27, 1994.
22. Prior to acceptance of the drawer assembler job at Timberlyne Cabinet Company, Plaintiff's previous vocational counselor, Jim Swain, located a position at Continental Fabrics which was within Plaintiff's vocational abilities and approved by Dr. Smith. In addition, open positions at convenience and jewelry stores, the latter of which Plaintiff declined to even try, were not only located and made known to Plaintiff, but were within his physical limitations and vocational abilities.
23. As described by vocational consultant George Page, if the Timberlyne Cabinet Company job had not been open and taken by Plaintiff, other work within his physical limitations, for which he was vocationally qualified, was available in the local labor market, both in June 1994 and in the time since he stopped working on February 10, 1995. Those jobs paid in the range of $5.00 to $7.00 per hour, or $200 to $280 per week.
24. Plaintiff has applied for no jobs, and has not even gone to the Employment Security Commission office to see what positions might be available, since he stopped working in February 1995.
25. Plaintiff has failed to make a reasonable effort to locate alternative employment.
26. Plaintiff remains no more than partially disabled from earning his pre-injury average weekly wage of $333.84. Pursuant to the parties' Industrial Commission approved Form 26 Supplemental Memorandum of Agreement as to Payment of Compensation, Plaintiff is entitled to receive additional temporary partial disability benefits at the rate of $79.56 per week for so long as he remains partially disabled, not to exceed 300 weeks from the date of his injury by accident.
******************
Based on the foregoing stipulations and findings of fact, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
CONCLUSIONS OF LAW
1. Upon entering into the July 25, 1994 Form 26 Agreement, Plaintiff made an election of remedies to receive temporary partial disability under G.S. § 97-30, rather than permanent partial disability under G.S. § 97-31. G.S. § 97-30; G.S. § 97-31;Gupton v. Builders Transport, 320 N.C. 38 (1987).
2. Plaintiff has not proven a substantial change in condition related to his March 3, 1992 injury rendering him totally disabled from all gainful employment.
3. Plaintiff was physically capable of, and vocationally qualified for, the position of drawer assembler at Timberlyne Cabinet Company when he voluntarily left that job on February 10, 1995 and retains the capacity to earn the wages he was making on and prior to that date.
4. Plaintiff was physically capable of, and vocationally qualified for, other competitive employment available in the local labor market on and after February 10, 1995, including those positions identified by vocational experts Jim Swain and George Page.
5. Plaintiff failed to make a reasonable effort to locate or obtain other employment after he left his job with Timberlyne Cabinet Company on February 10, 1995. Russell v. Lowe's ProductDistribution, 108 N.C. App. 762 (1993); Blair v. AmericanTelevision Communications Corp., 124 N.C. App. 420 (November 5, 1996).
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff shall continue receiving temporary partial disability benefits at the rate of $79.56 per week pursuant to the Form 26 Agreement so long as he remains partially disabled from gainful employment, but for a period of time not to exceed 300 weeks from March 3, 1992.
2. Defendants shall pay all medical, surgical, hospital or other treatment to Plaintiff resulting from the injury he sustained on March 3, 1992.
3. Plaintiff's attorney is awarded every fourth temporary partial disability check payable to Plaintiff in the future as compensation for legal services rendered.
4. Defendants shall pay the costs due the Commission.
 S/ __________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
CONCURRING:
S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________________ LAURA KRANIFIELD MAVRETIC COMMISSIONER
DEB:sm